# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

JOHN D. ASHLEY,                          )
                                         )
Plaintiff,                               )
                                         )
    vs.                                  )    CAUSE NO. 2:12-CV-468
                                         )
MICHAEL F. MOLLENHAUER,                  )
Sheriff, *et al.*,                       )
                                         )
Defendants.                              )

## OPINION AND ORDER

This matter is before the court *sua sponte* pursuant to 28 U.S.C. Section 1915A. For the reasons set forth below, the Court **GRANTS** the Plaintiff leave to proceed against Defendants Mollenhauer and Bell for damages on his Eighth Amendment claim that they required him to sleep on the floor and that conditions established by them caused him to contract an infectious disease, **DISMISSES**, pursuant to Section 1915A, all other claims, and **DISMISSES** Defendants Steve Vance and the Municipal Board of LaPorte County.

BACKGROUND

Plaintiff John Ashley ("Ashley"), a prisoner currently committed to the Indiana Department of Correction, filed his complaint while he was confined at the LaPorte County Jail. The defendants are the LaPorte County Municipal Board, LaPorte County Sheriff Michael Mollenhauer, and jail officials Scott Bell and Steve Vance (collectively, "Defendants"). Ashley alleges that the

Defendants violated rights protected by the United States Constitu-
tion's Eighth Amendment by subjecting him to unpleasant conditions
of confinement at the LaPorte County jail. He also alleges that the
jail's grievance officer neglected to answer his grievances or have
necessary work done concerning his grievances.

DISCUSSION

Pursuant to 28 U.S.C. § 1915A(a), district courts must review
the merits of any "complaint in a civil action in which a prisoner
seeks redress from a governmental entity or officer or employee of
a governmental entity," and dismiss it if the action is frivolous
or malicious, fails to state a claim upon which relief may be
granted, or seeks monetary relief against a defendant who is immune
from such relief. Fed. R. Civ. P. 12(b)(6) provides for the
dismissal of a complaint, or any portion of a complaint, for
failure to state a claim upon which relief can be granted. Courts
apply the same standard under § 1915A as when addressing a motion
under Rule 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th
Cir. 2006).

The pleading standards in the context of a motion to dismiss
for failure to state a claim are that the "plaintiff's obligation
to provide the grounds of his entitlement to relief requires more
than labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do." *Bell Atlantic v.
Twombly*, 550 U.S. 544, 555 (2007). A court should assume the

veracity of a complaint's allegations, and then determine whether they plausibly give rise to an entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

In the context of *pro se* litigation, the Supreme Court has stated that "[s]pecific facts are not necessary" to meet the requirements of Rule 8(a). The Court has further noted that a "document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

To state a valid cause of action under § 1983, a plaintiff must allege violation of rights secured by the Constitution or laws of the United States, and must show that a person acting under color of state law committed the alleged deprivation. *West v. Atkins*, 487 U.S. 42 (1988). The first inquiry in every § 1983 case is whether the plaintiff has been deprived of a right secured by the Constitution or laws of the United States. *Baker v. McCollan*, 443 U.S. 137, 140 (1979).

CONDITIONS OF CONFINEMENT CLAIMS AGAINST
DEFENDANTS MOLLENHAUER AND BELL

Ashley alleges that Defendants Mollenhauer and Bell violated rights protected by the Constitution's Eighth Amendment. In addressing a claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed

3

by the defendants' actions. *Graham v. Conner*, 490 U.S. 386, 394, (1989). The Fourteenth Amendment's due process clause protects pretrial detainees and the Eighth Amendment's cruel and unusual punishments clause protects the rights of those convicted of crimes. *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979). But "[a]lthough the Eighth Amendment only applies to convicted prisoners . . . the same standard applies to pretrial detainees under the Fourteenth Amendment's due process clause." *Williams v. Rodriguez*, 509 F.3d 392, 401 (7th Cir. 2007).

Ashley states in his complaint that he was at the jail as a pretrial detainee and after conviction while serving a sentence (DE 1 at 1). Accordingly, this Court will evaluate his claims under both the Eighth and Fourteenth Amendments.

A violation of the cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the official's actual state of mind was one of "deliberate indifference" to the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294 (1991). "Not all prison conditions trigger Eighth amendment scrutiny — only deprivations of basic human needs like food, medical care, sanitation, and physical safety." *James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir.1992). Although the Eighth Amendment protects prisoners from

cruel and unusual living conditions, an inmate is not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement, for, "[t]o the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

"Obduracy and wantonness rather than inadvertence or mere negligence characterize conduct prohibited by the Eighth Amendment. To state a claim under the Eighth Amendment, [the plaintiff] must, at minimum, allege facts sufficient to establish that the defendants possessed a total unconcern for [his] welfare in the face of serious risks." *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994). Negligence, gross negligence, or even "recklessness" as that term as used in tort cases, is insufficient to constitute an Eighth Amendment violation; "deliberate indifference amounts to criminal recklessness-the defendant must have known that the plaintiff 'was at serious risk of being harmed, [and] decided not to do anything to prevent that harm from occurring even though he could easily have done so.' *Armstrong v. Squadrito*, 152 F.3d 564, 577 (7th Cir. 1998), quoting *West v. Waymire*, 114 F.3d 646, 651 (7th Cir. 1997).

In paragraph one of his complaint, Ashley alleges that as a result of overcrowding at the jail, "Men were made to sleep on the dayroom floor; cells were filled beyond intended capacity by making inmates sleep on the floor in the cell" (DE 1 at 3). Sleeping on

the floor, however, does not deprive a prisoner of the minimal civilized measure of life's necessities so long as jail officials provide a mattress. *See Mann v. Smith*, 796 F.2d 79, 85 (5th Cir. 1986) (Prisoners do not have a constitutional right to elevated beds, and may be required to sleep on mattresses on the floor).

The complaint does not specifically state whether or not Ashley himself slept on the floor, and if he did sleep on the floor whether or not he had a mattress. But pro se complaints are to be construed liberally, *Erickson v. Pardus*, 551 U.S. 89, and "Fed. R. Civ. P. 8 establishes a system of notice pleading," *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998). Accordingly, if Ashley was forced to sleep on the floor without a mattress, the Court cannot say that he has not stated a plausible claim for relief.

In paragraphs one and two of his complaint, Ashley claims that the toilet in his cell:

> quit working on or about 10-9-2012 to the present 10-28-2012. We were forced to use [the] broken toilet while being locked in [our] cell, resulting in [a] build up of human waste to which we were allowed to use the toilet in the dayroom, but was (sic) never moved from the cell with the broken toilet.

DE 1 at 3-4. Elsewhere in his complaint, Ashley states that "once this [problem with the toilet] was reported we were allowed to use the toilet in the dayroom, but [we were] never removed from the cell with the broken toilet" (DE 1 at 4).

6

The Eighth Amendment does not require that prisoners enjoy immediately available and flushable toilets at all times. *See Knop v. Johnson*, 977 F.2d 996, 1013, (6th Cir. 1992) ("We do not agree that it violates the Eighth Amendment to require prisoners to use nonflushable toilets on occasion"). While the Constitution protects prisoners from cruel and unusual living conditions, an inmate is not entitled to relief because he has been exposed to uncomfortable, restrictive, or inconvenient conditions of confinement, like a poorly-flushing toilet or unpleasant smells. See *Henderson v. Virginia*, 2007 U.S. Dist. LEXIS 70207, at *26, 2007 WL 2781722, at *7 (W.D.Va. Sept.21, 2007) (unpublished).

Ashley admits in his complaint that as soon as jail officials became aware that the toilet in his cell was not working, they made arrangements for him and the other inmates in his cell to use another toilet. Because jail officials made arrangements for Ashley and his cellmates to have access to a toilet as soon as they became aware that the commode in their cell was broken, they were not obdurate, their actual state of mind was one of deliberate indifference, and they did not deprive Ashley of the minimal civilized measure of life's necessities.

Finally, Ashley asserts that overcrowding at the jail "has placed and continues to place myself and class members[1] at risk for

---

[1] Ashley sought to bring this action as a class action, but the Court denied that request (DE 7).

infectious diseases and we have become ill as a result" (DE 1 at 4). Overcrowding and other jail conditions resulting in an increased "risk of spreading infections disease" might violate "established federal constitutional rights." *Brown v. Mitchell*, 327 F.Supp. 615, 635 (E.D.Va. 2004). The Court will allow Ashley to proceed on this claim, but in order to ultimately prevail, he must be able to establish not only that the conditions created at the LaPorte County Jail by jail officials made it more likely that inmates would catch infectious diseases, but also that he was one of the inmates who "became ill as a result" of jail conditions established or condoned by Defendants Mollenhauer and Bell.

CLAIM AGAINST DEFENDANT VANCE

In paragraph three of his complaint, Ashley alleges that Sergeant Vance is the grievance officer at the jail and that he violated Ashley's federally protected rights because he "neglected to answer my grievances or have the necessary work done concerning my grievances" (DE 1 at 5). But a prisoner has no due process rights with respect to prison or jail grievance procedures, and that a grievance official ignores, mishandles, or denies a prisoner's grievance does not state a claim under § 1983. Prison or jail grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, so the alleged mishandling of a prisoner's grievances by persons who otherwise did not cause or participate in

8

the underlying conduct states no claim upon which relief can be granted. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *see also George v. Smith*, 507 F.3d. 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the [Constitutional] violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation").

Accordingly, Ashley's claim that Sergeant Vance neglected to answer his grievances states no § 1983 claim upon which relief can be granted. Preventing a prisoner from filing a grievance or failure to respond to a prisoner's grievance may, however, preclude jail officials from relying on 42 U.S.C. § 1997e(a), which requires prisoners to exhaust any available institutional grievance procedure before they may file a § 1983 claims regarding conditions of confinement.

CLAIMS AGAINST THE LAPORTE COUNTY MUNICIPAL BOARD

In paragraph four of his complaint, Ashley alleges that the Laporte County Municipal Board is the "overseer of county funding for [the] jail," and that the board "has failed and continues to fail to provide and ensure adequate funding to [the] jail to ensure [that the] jail maintains [a] healthful and safe environment for detainees" (DE 1 at 5). He also alleges that the board's "custom and policy" of "not ensuring funding for jail upkeep required by A.C.A. . . . also directly violates IC 11-11-6-1 of Indiana law prohibiting substantial jail environments" (DE 1 at 6).

The first inquiry in every § 1983 case is whether the plaintiff has been deprived of a right secured by the Constitution or laws of the United States. *Baker v. McCollan*, 443 U.S. at 140. To state a claim under § 1983, a Plaintiff must establish that a defendant deprived him of a right secured by the Constitution or laws of the United States, so his allegation that the Laporte County Municipal Board may have violated provisions of Indiana law states no claim upon which relief can be granted under § 1983.

In regard to Ashley's claim that the municipal board's failure to provide more funding to the LaPorte County Jail resulted in conditions that harmed him, "[a] governmental body's policies must be the moving force behind the constitutional violation before we can impose liability under *Monell*." *Thomas v. Cook County Sheriff's Dept.* 604 F.3d 293, 306 (7th Cir. 2010), citing *Woodward v. Correctional Medical Services*, 368 F.3d 917, 927 (7th Cir. 2004) ("a municipal policy or practice must be the 'direct cause' or 'moving force' behind the constitutional violation . . . In other words, 'it is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983").

"Obduracy and wantonness rather than inadvertence or mere negligence characterize conduct prohibited by the Eighth Amendment. To state a claim under the Eighth Amendment, [the plaintiff] must, at minimum, allege facts sufficient to establish that the defen-

10

dants possessed a total unconcern for [his] welfare in the face of serious risks." *McNeil v. Lane*, 16 F.3d at 124. Negligence, gross negligence, or even "recklessness" as that term as used in tort cases, is insufficient to constitute an Eighth Amendment violation. *See Armstrong v. Squadrito*, 152 F.3d at 577. Nothing in the complaint suggests that the LaPorte County Municipal Board was obdurate wanton, or that they adopted a funding formula with the intent to harm Ashley and the other inmates at the jail.

INJUNCTIVE AND DECLARATORY RELIEF CLAIMS

Ashley's complaint seeks damages and injunctive and declara- tory relief (DE 1 at 7). Ashley was housed at the LaPorte County Jail when the events he complains of occurred, but he has since been transferred to the custody of the Indiana Department of Correction, and is no longer confined at the LaPorte County Jail. If a prisoner is released or transferred to another facility, his request for injunctive relief against officials of the first facility is moot unless "he can demonstrate that he is likely to" return to the first facility. *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996), quoting *Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir. 1988). A prisoner's transfer or release also renders his claims for declaratory relief moot. *Higgason v. Farley* , 83 F.3d at 811, citing *Murphy v. Hunt* , 455 U.S. 478, 482 (1982) (applying the capable-of-repetition doctrine without discrimination between claims for declaratory relief and claims for injunctive relief).

Because Ashley is no longer confined at the LaPorte County Jail, his requests for injunctive and declaratory relief against LaPorte County officials are moot. *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974); *Martin v. Davies*, 917 F.2d 336, 339 (7th Cir. 1990), *cert. denied* 501 U.S. 1208 (1991). It is possible that Ashley could return to the jail in the future, but the mere possibility of re-transfer is insufficient. The standard to be applied here is whether he is "likely" to return to the jail. There is no reasonable basis for the court to conclude that Ashley is likely to return to the LaPorte County Jail.

CONCLUSION

For the foregoing reasons, the Court:

(1) **GRANTS** the Plaintiff leave to proceed against Defendants Mollenhauer and Bell for damages on his Eighth and Fourteenth Amendment claims that they required him to sleep on the floor and that conditions established by them caused him to contract an infectious disease;

(2) **DISMISSES**, pursuant to 28 U.S.C. § 1915A, all other claims, and **DISMISSES** Defendants Steve Vance and the Municipal Board of LaPorte County;

(3) Pursuant to 42 U.S.C. § 1997e(g)(2), **ORDERS** that Defendants Mollenhauer and Bell respond to the complaint as provided for in the Federal Rules of Civil Procedure;

(4) **DIRECTS** the Marshals Service to effect service of process

on Defendants Mollenhauer and Bell on the Plaintiff's behalf, and **DIRECTS** the Clerk's Office to ensure that a copy of this order is served on them along with the summons and complaint; and

(5) **DIRECTS** the Clerk to mail a copy of the Court's order granting the Plaintiff *in forma pauperis* status (DE 4) to the Superintendent of the facility at which the Plaintiff is now confined.

DATED: January 31, 2013        S/RUDY LOZANO, Judge
                                      United States District Court